The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and the briefs and arguments of the parties on appeal. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with minor modifications and the modification of Finding of Fact #15 and Conclusion of Law #3.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. The employment relationship existed between plaintiff-employee and defendant-employer.
3. There was not a specific stipulation of average weekly wage, but the parties agree that plaintiffs wage would generate the maximum compensation rate available at the time of his alleged injury, $512 per week for 1997.
4. While the date of the alleged injury on the Form 33 is August 27, 1997, plaintiff seeks compensation for a repetitive motion injury to his knees.
 ***********
Based upon the competent evidence of record, the undersigned makes the following additional
 FINDINGS OF FACT
1. Plaintiff was born on October 15, 1956 and was 41 years of age on the date of the hearing before the Deputy Commissioner. Furthermore, at the time of that hearing, plaintiff who had obtained his G.E.D. was attending Vance-Granville Community College with plans to transfer to a four-year college. In addition, plaintiff plans to complete his undergraduate degree and hopes to attend law school.
2. Plaintiff is the owner and operator of Floors Perfect, a business he started in 1994, which installs carpet, vinyl tile and linoleum. Plaintiff previously did much of the actual installation himself, working about 8 hours per day of which he spent up to 6 hours working on his knees on the floor. Plaintiff has performed this type of flooring work for about 10 to 15 years since before he started his own business.
3. Plaintiff stopped performing the actual installation of flooring himself as of September 9, 1997, when he sustained an unrelated injury to his back from a fall. Plaintiff was out of work due to that injury until February 1998. At the time of the hearing before the Deputy Commissioner, he contracted out all his labor.
4. Plaintiff did not sustain any specific injury or trauma on or about August 27, 1997. He had been experienceing problems with both knees in the weeks preceeding this date. On this date he had pain in his knees and had difficulty getting up from a kneeling position.
5. Due to his knee pain, plaintiff sought treatment at Wake Medical Center emergency room on August 27, 1997, where he reported knee pain for about two months and that he worked installing flooring. Plaintiff was advised to see an orthopaedic specialist.
6. On January 13, 1998, plaintiff was first seen for his knee problems by orthopaedic surgeon, Dr. George Callaway. He reported to Dr. Callaway a history of one to two years of increasing knee pain. Plaintiff was not in acute distress at the time. The x-rays were normal and the physical exam showed a full range of motion in both knees, stable in both planes, with no effusion. Dr. Callaway found some crepitus, a crunching noise behind the kneecaps. Lachmans test and McMurrays test were both negative, indicating there was no cartilage or ligament tear.
7. Dr. Callaway diagnosed plaintiff with bilateral patellofemoral pain, also known as anterior knee pain. Dr. Callaway prescribed Daypro, an anti-inflammatory medication, and sent plaintiff to physical therapy, which should benefit plaintiff by strengthening his inner thigh muscles, which would improve the tracking of the kneecap to be more centralized and less painful. Nevertheless, plaintiff did not take the prescribed medications and did not participate in the therapy. At his February 24, 1998 visit, he reported to Dr. Callaway that he had taken Daypro before and it was not helpful. Until he was deposed, Dr. Callaway was unaware that plaintiff did not follow through with the recommended physical therapy.
8. Plaintiff attended the first physical therapy visit only and did not follow-up. Plaintiff advised the therapist that due to his work which involved heavy lifting, he was not inclined to participate in further exercise. However, this physical therapy was prescribed during January and February 1998, a time when plaintiff has acknowledged that he was, in fact, not working due to his back injury.
9. At his February 24, 1998 visit, Dr. Callaway again found plaintiff had full range of motion of his knees, with no effusion and the knees stable in place. The Lachmans test and McMurrays test were both negative. Dr. Callaways assessment remained bilateral patellofemoral pain syndrome. He advised plaintiff to continue his exercise program, since he was unaware that plaintiff was not doing the prescribed exercises. In addition, he released plaintiff to return to work with the restriction of no kneeling.
10. Plaintiff did not return to see Dr. Callaway or otherwise seek medical treatment for his knees for almost a year until February 18, 1999 when he returned to see Dr. Callaway. At that time Dr. Callaway recommended an MRI. An MRI of plaintiffs right knee showed a defect on the cartilage on the backside of the kneecap and a small cartilage tear on the lateral tibial plateau, permanent changes which Dr. Callaway attributes to plaintiffs work installing flooring, which required him to be on his knees most of the work day. The MRI also showed a small medial meniscus tear, which Dr. Callaway does not attribute to plaintiffs work.
11. The only other possible treatment recommended by Dr. Callaway is an arthroscopy of plaintiffs right knee and an MRI of the left knee. Otherwise, as of plaintiffs last visit on July 27, 1999 with Dr. Callaway, plaintiff was at maximum medical improvement with a five percent permanent partial impairment to his right knee and a two and one-half percent permanent partial impairment to his left knee.
12. Dr. Callaway indicated that plaintiffs employment caused his knee problems and that the employment exposed plaintiff to a greater likelihood of developing these problems.
13. Plaintiff continued to operate his business but did not himself resume installation of flooring materials after September 1997. Although he stopped this work, his knee condition did not significantly improve but stayed more or less the same. A physical capacity evaluation done on April 29, 1998 showed that plaintiff could perform work which required that he frequently lift and carry up to 50 pounds, bend at the waist and handle materials with his upper extremities. He could work at heights, drive and work with machinery, and work in various temperatures and humidity. Plaintiffs only permanent restriction was no kneeling.
14. Plaintiffs knee condition is causally related to his employment and developed due to the greater risk of such injury from the employment.
15. Plaintiff has failed to prove by the greater weight that he is incapable of work in any employment or that he is capable of some work but has been unsuccessful after making reasonable efforts to locate employment. In fact, plaintiff, without reasonable efforts to locate employment, voluntarily removed himself from the job market and chose to enter community college in the summer of 1998. Plaintiff has not demonstrated that he is incapable of earning wages due to his knee condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned enters the following
 CONCLUSIONS OF LAW
1. As a result of his employment, plaintiff has developed a compensable occupational disease, bilateral patellofemoral pain, a condition which is due to causes and conditions peculiar to his employment and which is not a condition to which the general public is equally exposed. N.C. Gen. Stat. 97-53(13).
2. Subject to the limitations of N.C. Gen. Stat. 97-25.1, defendants are responsible for payment of all reasonably necessary medical expenses which tend to effect a cure, provide relief or lessen the period of plaintiffs disability which are incurred for plaintiffs treatment of his bilateral patellofemoral pain. N.C. Gen. Stat. 97-2(19), 97-25.
3. Plaintiff has not suffered any loss of wage earning capacity as a result of his bilateral patellofemoral pain since plaintiff has failed to prove by the greater weight that he is incapable of work in any employment or that he is capable of some work but has been unsuccessful after making reasonable efforts to locate employment. Moreover, plaintiff voluntarily removed himself from the labor market to pursue his education and the greater weight of the evidence fails to establish any periods of time for which he would be entitled to benefits for either temporary partial or total disability. N.C. Gen. Stat. 97-29. Russell v. Lowes Prod. Distrib., 108 N.C. App. 762, 425 S.E.2d 545 (1993).
4. Plaintiff has reached maximum medical improvement from his bilateral patellofemoral pain and has sustained a five percent permanent impairment to his right leg and a two and one-half percent permanent impairment to his left leg for which he is entitled to compensation pursuant to N.C. Gen. Stat. 97-31(15).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay, subject to the limitations of N.C. Gen. Stat.97-25.1, all reasonably necessary medical expenses which tend to effect a cure, provide relief or lessen the period of plaintiffs disability which are incurred for plaintiffs treatment of his bilateral patellofemoral pain.
2. Defendants shall pay plaintiff compensation at the rate of $512.00 per week beginning July 27, 1999 and continuing for fifteen weeks as compensation for his five percent permanent partial impairment to his right leg and his two and one-half percent permanent impairment to the left leg.
3. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff is approved for his counsel.
4. Defendants shall pay the costs due this Commission.
This the ___ day of December 2000.
 S/____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ BERNADINE S. BALLANCE COMMISSIONER
S/________________ RENE C. RIGGSBEE COMMISSIONER